Filed 5/29/13  Henry v. Drohan CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| MARLO HENRY,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>SEAN B. DROHAN,<br><br>      Defendant and Appellant. | B240190<br>(Los Angeles County<br>Super. Ct. No. BQ036192) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Holly J. Fujie, Judge.  Affirmed.

Law Offices of Sanford L. Horn and Sanford L. Horn for Defendant and Appellant.

Christopher Brainard for Plaintiff and Respondent.

_____

## *INTRODUCTION*

The litigation involving this matter had its source in a purported broken romantic relationship which led to allegations of violence and a need for a restraining order from the Los Angeles County Superior Court. The gravamen of the issue on appeal pertains to who started the fight initially which resulted in the orders issued by the Superior Court and not whether a fight occurred. Ultimately, the trial court primarily emphasized the need for its orders and placed a secondary importance on just who initially perpetrated the fight, and the reliability of the evidence in support thereof. For the reasons hereafter explained, we affirm the judgment of the trial court.

## *FACTUAL AND PROCEDURAL SYNOPSIS*

Marlo Henry ("Henry") and Sean Drohan ("Drohan") at one time lived together in a romantic relationship. In or about May of 2011 that relationship ended. The parties disagree over who perpetrated the end of the relationship, but it is clear from the record that the main incident which led to the filing of the petition for restraining orders occurred on February 5, 2012, which happened to be Superbowl Sunday. According to Henry, the incident started with a phone call from Drohan on February 5, 2012. Henry claimed she could see Drohan right outside her house on Hill Street in Monrovia as Drohan made the call to her. Henry claimed that Drohan was making numerous threatening calls to her and was posting threats and derogatory comments about her on Facebook.

Henry testified that at the time of the incident in question she was living with two people. One was Ryan Smith ("Smith") and the other one was Michael Ham ("Ham"). Henry further testified that both Smith and Ham went outside to ask Drohan to cease his conduct. When they returned to Henry's house both were injured. The police were called and took statements from Drohan, Smith and Ham. Photos of the injuries to Smith and Ham were taken.

2

Smith testified that he left Henry's home to join a group of his friends down the street from Henry's home and was attacked at that time by Drohan. The location of the fight, according to Smith, occurred in front of the house of Drohan's daughter. Smith had been previously warned not to come to the house of Drohan's daughter. Smith was aware of Henry's prior complaints about Drohan making threatening calls to her. But Henry did not indicate to Smith anything about threatening phone calls on the date of the fight. Smith was not made aware that Drohan was in a group down the street until he was attacked by Drohan. Smith further testified that he did not confront Drohan because of any threats that were made that day to Henry by Drohan.

In response, Drohan produced cell phone records from June of 2011 until mid-February of 2012. Drohan had no telephone other than his cell phone. The records produced revealed that no phone calls were made to any of the phone numbers belonging to Henry. Although these records were eventually received into evidence, Drohan maintains it is clear from the record that the court gave little consideration, if any, to Drohan's telephone records. Drohan opines and draws this conclusion based upon the court's stated distrust of the records for his failure to give Henry or her counsel the records for inspection prior to the hearing. Further, maintains Drohan, the trial court improperly refused his request that the cell phone and archived calls on Henry's cell phone be examined. The statement of reasons given by the trial court was to the effect that Henry's records would have no evidentiary value because Henry testified that she usually erases her phone messages. According to Drohan, this ruling was erroneous and constituted reversible error.

The trial court ultimately limited each side to two percipient witnesses to the fight that led to the request for a restraining order. The court refused to hear from at least five percipient witnesses who had attended court on behalf of Drohan. Richard Frost ("Frost") was called by Drohan and testified that the fight between Drohan and Smith began when Smith attacked Drohan. The trial court admitted into evidence, over objection, a copy of the police report which purported to include a statement from Frost

3

to the effect that he didn't see who started the fight. The report was admitted into evidence despite Frost's denial that he had made any such statement to the police. The officers who prepared the report were not called to testify. The police report as it pertains to Frost's statement was admitted into evidence in spite of timely objection by counsel for Drohan.[1]

## DISCUSSION

### Appellate contentions.

*By Drohan.*

Drohan's contentions are far from clear. Drohan appears to be approaching his claims of error from a technical standpoint in the face of the trial court's ruling which concentrates on the practical aspect of the case. Drohan summarizes the purported technical errors which require a reversal as follows: He did not start the fight which perpetrated the trial court's restraining order. Smith started the fight. The paper work requesting a restraining order was filed without notice to him. Cell phone records were produced by him showing he made no calls to Henry during the relevant period of time. Even though the pertinent cell phone records were eventually admitted into evidence, the court erred in not giving the records due consideration. The court erred in following the timeline dictates of Family Law Code section 6320.5 pertaining to domestic violence restraining orders. And finally, the court should have applied the considerably more lengthy timeline provisions contained in California Code of Civil Procedure section 1985, which it failed to do.

---

[1] We note that the phone records produced by Drohan and the police report were not found in the possession of the superior court. True and accurate copies of these documents would be lodged with this court, according to Drohan's counsel. The copies were lodged with this court on December 17, 2012.

4

*By Henry.*

Henry's appellate contentions are equally unclear, but appear to be based on her perception of the pragmatic approach utilized by the court in this case which would relegate Drohan's technical approach to the case as not dispositive. Henry appears to contend that even if the purported technical errors of the trial court were true, there is no abuse of discretion requiring reversal of the trial court.

***Standard of review.***

We find that the standard of review to be utilized is abuse of discretion as circumscribed in Code of Civil Procedure section 527.6.

Code of Civil Procedure section 527.6 provides in pertinent part: "(a)(1) A person who has suffered harassment, as defined in subdivision (b) may seek a temporary restraining order and an injunction prohibiting harassment as provided in this section. [¶¶] (b)(3) 'Harassment' is unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose. The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner."

After a party has requested an injunction, the opposing party may file a response and deliver it to the requesting party no later than 48 hours before the hearing. (Code Civ. Proc., § 527.6, subd. (d); Cal. Rules of Court, rule 3.1152(d).) The court must hold a hearing, receive relevant testimony, and must issue the injunction if it finds clear and convincing proof of harassment. (Code Civ. Proc., § 527.6, subd. (i); *Nora v. Kaddo* (2004) 116 Cal.App.4th 1026, 1028.)

We find no abuse of discretion for the following reasons:

We note at the outset that Drohan complains that he received no notice of the filing of the paper work which eventually led to the temporary restraining orders against him. Drohan asserts the paper work seeking a restraining order was signed on February 9, 2012, and the application for a restraining order was filed on February 10, 2012, at an

5

ex parte hearing that was held without notice to him. He appears to be suggesting that this failure to give him prior notice violated his rights which should result in a reversal of the judgment of the trial court. This court detects an inconsistency with this contention in that it is only partially accurate. Drohan, however, fails to bring to this court's attention the reason why he was not given the prior notice to which he claims he was entitled.

The declaration filed by Henry's counsel containing the reason for failure to give prior notice of the ex parte request for a temporary restraining order states: "I did not give notice to the other party in this action because: [¶] I was afraid that the violence would reoccur when I gave notice that I was asking for these orders." In Henry's petition for restraining orders she describes other recent abuse as follows "On January 6, 2012, Sean B. Drohan made countless calls and texts messages to me indicating that I was 'a bitch' and needed to 'be taught a lesson once and for all.' I did not respond to him and his messages only intensified him indicating that he knew people and that I or my daughter could simply 'disappear.' I asked if he was going to have me or my daughter killed and he stated that it would be 'no problem.' I tried to terminate communications with him through that weekend, but the harassment continued through the weekend with continued threats including the threat that he knew how to 'use' his 'guns.' On Monday January 9, 2012, I drove to work and noticed that a white truck was following me and I sped up to get to work and run in and I did so. I looked outside and the white truck followed me and began trolling such that I saw it was Sean B. Drohan and I had narrowly escaped by locking myself in the shop. [¶] Sean B. Drohan admits he has guns and has threatened to use his guns on me."

Henry also describes other abuse against her and her children as follows: "[A.E.] is my daughter. Sean B. Drohan used to live with me approximately 6 months ago and he would go on drunken rages and physically intimidate my daughter and I. He knows where my daughter goes to school."

We find no abuse of discretion by the trial court in issuing a temporary restraining order without requiring prior notice to Drohan. The declaration filed by Henry is

6

sufficient.  The temporary restraining order issued without notice to Drohan in this instance was clearly within the trial court's discretion at this initial stage of the proceedings and we so hold.

This court next notes that service of the temporary restraining order, documents in support thereof, and notice of the preliminary injunction hearing were subsequently served on Drohan.  Drohan was given an opportunity to respond before the hearing scheduled for February 29, 2012.  Drohan filed his response on February 27, 2012.  On February 29, 2012, the court conducted a one day bench trial and issued a restraining order which resulted in the filing of a timely notice of appeal by Drohan.  In view of our decision that the court did not abuse its discretion by issuing its restraining order, the temporary restraining order is now moot.

The findings and orders of the court following the trial are as follows:

"The [court] makes the following findings and orders:  [¶]  The facts of this case support issuing a restraining order under Family Code Section 6300.  [¶]  Based upon the evidence presented to the Court, the Court finds that the Respondent in [sic] engaged in conduct that placed Petitioner is [sic] in reasonable fear of serious bodily injury; or that Respondent engaged [in] a type of behavior identified in section 6320.  [¶]  The Court finds that Petitioner was in 'reasonable apprehension of imminent serious bodily injury[.]'  [¶]  Petitioner's request for restraining order after hearing is granted.  The restraining order will [sic] is granted for 3 years and will expire on March 1, 2015, 11:59 p.m."

The reasons given by the trial court in support of its findings and order are to be found in the reporters transcript on appeal, following arguments of counsel, as follows:

"[The Court:]  [¶]  I have considered all the evidence that has been presented here. I have looked at credibility issues with regard to both the petitioner and the respondent.  I have considered the witnesses, including Richard Frost who testified regarding his observations of the incident that allegedly precipitated this.  And I have read and reviewed the police report which says that the report that was given to the officer, again

7

according to the report and only in connection with potential inconsistent statements by Mr. Frost, where he said that Mr. Frost had said he had looked away and saw them wrestling on the ground which would indicate that he did not in fact see the first blow being struck. And he had no explanation for that inconsistency.

"My main concern with the incident in which Mr. Smith had the altercation was not so much that it doesn't relate so many [*sic*] directly to this as it relates to the high level of tension between the parties and those who lived in her home. I believe that the facts of this case do support issuing a restraining order under Family Code section 6300.

"Based upon the evidence presented to the court, the court finds that Mr. Drohan had engaged in conduct that placed Ms. Henry in reasonable fear of serious bodily injury or that he engaged in a type of behavior identified in section 6320. The court finds that Ms. Henry was in reasonable apprehension of imminent serious bodily injury. Therefore, on that ground I will issue the restraining order.

". . . . .

"The Court: All right. With regard to the restraining order in the matter of Henry versus Drohan, which is case No. BQ 036192, this restraining order shall remain in effect for three years from today's date expiring on March 1 since it's leap day today. We'll make it February 28, 2015, at midnight.

"Mr. Drohan, as the person restrained, you must not do the following things to the protected people listed which would be Ms. Marlo Henry and her daughter who was previously listed in the temporary restraining order, Alexandra Elardy, to harass, attack, strike, threaten, assault, sexually or otherwise, hit[,] follow, stalk, molest, destroy personal property, disturb the peace, keep under surveillance, or block movements.

"You may not contact either directly or indirectly by any means, including, but not limited to by telephone, mail, e-mail or other electronic means, or take any actions directly or through others to obtain the addresses or locations of any protected persons with the exception of brief and peaceful contact – you know what, there are no children of this relationship. So, therefore, that is not necessary. All right.

8

"There is a stay-away order. Person must stay at least 100 yards away from Ms. Henry and her daughter, the job or work place of Ms. Henry. And with regard to the residence, of Ms. Henry, with exception with regard to the residence, you may visit peaceably with your daughter or your brother and you may visit others residing on the street of Ms. Henry for legitimate business purposes.

"It's my understanding from your response you have no guns or other firearms.

"Respondent: No, I do not, Your Honor.

"The Court: You are also not allowed to, rather, Ms. Henry has the right to record communications made by Mr. Drohan that violate the judge's orders.

"That's the order. Thank you. . . ."

***Conclusion.***

Condensing our conclusion to its simplest terms, this court is of the opinion that the technical issues raised by Drohan contain no dispositive consequences. The trial court decided the issues on the basis that the evidence pertaining to the admitted altercation or fight demonstrated a high level of tension between the parties and those who lived in Henry's home. Who threw the first punch was not the determinative issue, it was the level of "tension" as well as the level and tenor of Drohan's disproportionate and overreactive violent response that warranted issuing the restraining order. This court discerns that any reasonable trier of fact could arrive at this conclusion based on the undisputed facts irrespective of who threw the first punch.

This court concludes that even if the trial court erred, Drohan received a fair hearing and no miscarriage of justice occurred to warrant reversal. (See *Brown v. Newby* (1940) 39 Cal.App.2d 615, 618, where the court held that "To be entitled to relief on appeal from the result of an alleged abuse of discretion it must clearly appear that the injury resulting from such a wrong is sufficiently grave to amount to a manifest miscarriage of justice.")

9

### *DISPOSITION*

The judgment is affirmed.  Respondent is awarded costs on appeal.


**WOODS, J.**


**We concur:**


**PERLUSS, P.J.**                    **ZELON, J.**